UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TREVOR JAMES CARRIER,

               Petitioner,

v.

DEWAYNE BURTON,

               Respondent.

_____/

Case No. 1:19-cv-723

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Trevor James Carrier is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  On August 27, 2014, after a two-day trial, an Emmet County Circuit Court jury found Petitioner guilty of 16 counts of first-degree criminal sexual conduct (CSC-I) perpetrated against three female cousins over a period of years, in violation of Mich. Comp. Laws § 750.520b.  On October 8, 2014, the court sentenced Petitioner to 16 concurrent prison terms of 25 to 50 years.

       On September 3, 2019, Petitioner timely filed his habeas corpus petition raising eight grounds for relief, as follows:

> I.     [Petitioner was] denied a fair trial when the trial court improperly denied his motion for mistrial after the officer in charge of the case testified the complainants were very truthful.
>
> II.    Trial court allowed testimony of prior bad acts which were more prejudicial than probative and increased jury confusion.
>
> III.   Ineffective assistance of trial counsel.  Counsel failed to (A) request production of res gestae witnesses, (B) advise of mandatory minimum 25-year sentence including plea deals, (C) do basic pretrial investigation,

> (D) contact and subpoena known alibi, res gestae, and expert witnesses, (E) object to prosecutorial misconduct, (F) impeach prosecution's witnesses, and (G) [introduce] evidence of location [of alleged offenses].

IV.    Prosecutorial misconduct [, including] . . . faulty investigation . . . suppressed evidence and witnesses[, solicitation of] knowingly false/perjured testimony[, and failure] to endorse res gestae witnesses.

V.    14th and 6th Amendment state and federal rights to due process were violated when trial court failed to appoint new counsel.

VI.    Due process rights were violated when his transcripts were altered and missing.

VII.    6th, 5th, and 14th Amendment rights under Michigan and United States constitutions were violated when the cumulative effect of constitutional violations denied [Petitioner] due process.

VIII.    Denied 6th Amendment right to effective assistance of appellate counsel for (A) failing to raise meritorious claim of ineffective trial counsel at trial and pretrial, (B) failure to raise prosecutorial misconduct, and (C) failed to request an evidentiary hearing needed to create a reviewable record.

(Pet., ECF No. 1, PageID..)  Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are not cognizable, procedurally defaulted, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or not cognizable.  Accordingly, I recommend that the petition be denied.

## Discussion

I.    **Factual allegations**

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The three victims testified to a longstanding pattern of sexual abuse by defendant.  Defendant is the cousin of all three victims.  The abuse involved oral sex acts, penile-vaginal intercourse, digital penetration, and anal penetration.  The abuse started before the victims' teenage years.

2

(Mich. Ct. App. Op., ECF No. 10-9, PageID.987.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Although Petitioner denies that the events described by the victims occurred, his habeas challenges do not call into question the accuracy of the appellate court's description of the testimony.

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals, raising two issues—the same issues he raises herein as habeas grounds I and II. (Pet'r's Appeal Br., ECF No. 10-9, PageID.901.)  The Michigan Court of Appeals rejected Petitioner's challenges by unpublished opinion issued February 16, 2016.  (Mich. Ct. App. Op., ECF No. 10-9, PageID.987–990.)  Petitioner, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court raising the same issues he raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 10-10, PageID.995.)  By order entered September 6, 2016, the supreme court denied leave to appeal.  (Mich. Order, ECF No. 10-10, PageID.991.)

On October 23, 2017, Petitioner filed a motion for relief from judgment in the Emmet County Circuit Court raising several issues, including the issues he raises in this Court as habeas grounds III through VII.  By opinion and order issued June 27, 2018, the trial court denied relief.  (Emmet Cnty. Cir. Ct. Op. and Order, ECF No. 10-11, PageID.1118–1125.)  Petitioner filed an application for leave to appeal that decision to the Michigan Court of Appeals.  By order entered December 12, 2018, the court of appeals denied leave.  (Mich. Ct. App. Order, ECF No. 10-11, PageID.1014.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court.  The application raised the issues Petitioner raises in this Court as habeas grounds III

through VIII.  By order entered July 29, 2019, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 10-12, PageID.1308.)

This timely petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is

4

limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Mistrial after a witness testified regarding the credibility of the complainants (habeas ground I)

During Petitioner's counsel's cross-examination of investigating State Trooper Michael Jermeay, counsel asked Jermeay why he did not refer the victims to a physician or sexual assault nurse examiner for examination.  (Trial Tr. II, ECF No. 10-6, PageID.741–743.)  Trooper Jermeay noted that the assaults had occurred years before his contact with the victims, so he did not believe an examination was warranted.  Counsel asked whether scarring might exist following unlubricated vaginal and anal penetration.  The trooper responded he did not know.  Counsel pressed the trooper to explain, then, why he did not call for a medical examination by a doctor or

nurse.  The trooper responded that he "felt that [the victims] were being very truthful in what they were telling [him]."  (*Id.*, PageID.743.)

Recognizing that the witness had improperly commented on the veracity of the victims, the trial judge excused the jury.  (*Id.*)  The judge instructed the witness not to offer opinions regarding the truthfulness of anybody.  (*Id.*)  Defense counsel moved for a mistrial.  (*Id.*, PageID.744–746.)  The trial judge denied defense counsel's motion, but indicated his intent to give the jury a cautionary instruction.  When the jurors returned, the court instructed them as follows:

> We're back on the record in the case of the People of the State of Michigan versus Trevor Carrier.  Jurors, before we recessed, the witness, Trooper Jermeay gave testimony about his opinion concerning the truthfulness of the girls who are the complaining witnesses in this case.  That testimony is highly improper. Witnesses are not permitted to testify concerning the truthfulness of other witnesses.  This is because the determination of the credibility of witnesses is solely the province of the jury.  It is for you to decide, and witnesses are not allowed to testify on that issue, thus you mist disregard that testimony from Trooper Jermeay. You must give it no consideration whatsoever as you assess the facts of this case. I'm instructing you to disregard that testimony.

(*Id.*, PageID.749.)

Petitioner contends that the trial court erred when it denied a mistrial and that his trial was rendered unfair by Trooper Jermeay's testimony regarding the veracity of the complaining witnesses.  The court of appeals disagreed:

> The testimony at issue was brief, was immediately dealt with by the court, and was not repeated or argued later.  The court's curative instruction was timely, direct, and blunt.  The court told the jury the "testimony was *highly* improper" (emphasis added) and explained why this was so.  The court reminded the jurors of their role in the proceedings and told them they must give the testimony "no consideration whatsoever" in assessing the facts.  "It is well established that jurors are presumed to follow their instructions," *People v. Graves*, 458 Mich 476; 581 NW2d 229 (1998), and the record is devoid of anything indicating that this presumption is unwarranted here.  We further note that the evidence of defendant's guilt was very strong.  Indeed, the multiple victims gave detailed evidence of the sexual abuse.  Under all the circumstances, we find no basis for reversal.

(Mich. Ct. App. Op., ECF No. 10-9, PageID.988) (footnote omitted).

7

The decision to grant or deny a mistrial is, generally, a matter of state law and a challenge to such a decision is not cognizable on federal habeas review. *See, e.g., Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012); *Barry v. Warren*, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11, 2019). Yet the decision may impact federal constitutional rights. *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[A] constitutionally protected interest is inevitably affected by any mistrial decision."). If a mistrial is granted absent manifest necessity, the Double Jeopardy Clause may preclude retrial. *Renico v. Lett*, 559 U.S. 766 (2010). Or if a mistrial is requested because of some perceived unfairness caused by the admission of evidence or improper argument, and denied, the underlying impropriety might result in the denial of due process. To ensure those rights are protected, "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." *Washington*, 434 U.S. at 514; *see also Renico*, 559 U.S. at 775 ("[T]he judge's exercise of discretion must be 'sound' . . . .").

Filtered through the doubly deferential standard of the AEDPA, "[t]he question . . . is . . . whether the determination of the [state court] that there was no abuse of discretion was 'an unreasonable application of . . . clearly established Federal law.'" *Renico*, 559 U.S. at 773. Petitioner cannot make the necessary showing here. As noted by the state court of appeals, the jurors here were instructed to disregard the offending testimony and jurors are presumed to follow their instructions. (Mich. Ct. App. Op., ECF No. 10-9, PageID.988.) That determination is entirely consistent with clearly established federal law. *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.    Prior bad acts (habeas ground II)

The prosecutor charged Petitioner with the sexual assaults he committed in Eaton County.  Petitioner's abuse of the victims, however, was not restricted to Eaton County.  The victims alleged other incidents in other counties.   The Michigan Court of Appeals described Michigan's rules regarding the admission of such evidence as follows:

> In Michigan, "[i]n cases involving the sexual abuse of minors, MCL 768.27a . . . allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior towards other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).  MCL 768.27a(1) provides, in pertinent part:
>
>> [I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.
>
> The Court in *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012), held that evidence admissible under MCL 768.27a is subject to MRE 403 balancing, and "provided guidance to trial courts in applying MCL 768.27a and the balancing test of MRE 403," *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014).  "[T]he propensity inference of the evidence must be weighed in favor of the evidence's probative value." *Id*.; see also *Watkins*, 491 Mich at 486-487.
>
> The *Watkins* Court provided a list of factors that could be considered under MRE 403:
>
>> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  [*Watkins*, 491 at 487–488.]

(Mich. Ct. App. Op., ECF No. 10-9, PageID.989.)   Although the statute and rule permit the admission of such evidence, Petitioner's trial judge restricted the scope of the "other acts" evidence he would allow:

> Alright, Mr. Fenton [prosecutor].  The Court will allow you to ask a couple general questions to establish your assertion that similar events, uncharged events, happened elsewhere, and then at that point I find that any continuation of this

9

involves the probative value being outweighed by the considerations under 403, and I'll instruct you to proceed on to the charged accounts, so one or two questions and then move on.

\*    \*    \*

It's admissible subject to me making a determination under Rule 403, whether the prejudicial impact outweighs the probative value.  Probative value is to put this into context and establish your claim that this didn't just happen once or twice, which might be more difficult for a jury to comprehend, but there was a course of conduct over a period of time.

\*    \*    \*

You've established a starting point.  I'll allow you to ask a couple questions to establish that this conduct continued, which is what I just said, and then I will allow you to move, and direct you to move to the events that are in question here, and I'm not going to hear any further quarrelling from you or statements in the presence of the jury that suggests that it's up to you to decide whether you follow the directions from the [c]ourt.  Am I clear?

(*Id*., 989–90.)  Then, the court specifically instructed the jury how to consider the "other acts"

evidence:

The Prosecution has introduced evidence of claimed acts of sexual misconduct by the Defendant with the complaining witnesses for which he is not on trial. . . .  If you find that the Defendant did commit those acts, you may consider them in deciding if the Defendant committed the offense for which he is now on trial.  You must not convict the Defendant solely because you think he's guilty of other bad conduct.

(*Id*., PageID.990.)

The court of appeals concluded that the evidence was properly admitted under the

statute and rule:

The uncharged acts were similar to the charged acts.  Each victim gave testimony of how defendant sexually assaulted them, beginning at a young age, and on family property.  The descriptions of the occurrences are comparable.  The testimony established that the uncharged acts were a part of an ongoing and longstanding pattern of abuse.  Finally, the victims' evidence corroborated each other's accounts.  Under these circumstances, the probative value of the evidence was not outweighed by the danger of unfair prejudice.  MRE 403.

(*Id*.)

10

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67–68.[1]  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders*, 221 F.3d at 860.  Petitioner has not met this difficult standard.

---

[1] The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The state court's decision that the evidence was properly admitted under state statues and rules is axiomatically correct on habeas review.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Therefore, the state court's admission of such evidence cannot be contrary to, or an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief on this claim.

## V.     Prosecutorial misconduct (habeas ground IV)

Petitioner contends that the prosecutor conducted a faulty investigation, suppressed evidence and witnesses, solicited knowingly false/perjured testimony, and failed to endorse *res gestae* witnesses.  To be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the

prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

### A.   Faulty investigation

Petitioner provides very little detail regarding his "faulty investigation" claim.  He states:

> [Petitioner's] 14th Amendment State and Federal right to due process was violated when [the] prosecution conducted [a] faulty and incomplete investigation, further failing to oversee that Trooper Jermeay conducted a complete investigation.  If he had he would have been completely aware the basis of his charges [was] false.

(Mot. for Relief from J., ECF No. 1-1, PageID.90.)  Petitioner offers nothing further regarding this argument in his motion or his subsequent appeals.  Perhaps that explains the trial court's failure to address the argument.  (Emmet Cnty. Cir. Ct. Order, ECF No. 10-11, PageID.1123–1124.)

"The prosecutor is not obligated to discover exculpatory evidence."  *Walker v. Jackson*, No. 20-1383, 2020 WL 6326329, at *2 (6th Cir. Sept. 3, 2020) (citing *Cope v. United States*, 272 F. App'x 445, 451 (6th Cir. 2008); *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)); *see also Root v. Skipper*, No. 1:18-cv-783, 2020 WL 5351069, at *6 (W.D. Mich. Feb. 10, 2020) *R. & R. adopted*, 2020 WL 3071751 (Jun. 10, 2020) ("[O]nce the police have sufficient evidence to establish probable cause, they may arrest and proceed against a suspect without conducting a further investigation for exculpatory evidence which may have exonerated the suspect.") (citation and internal quotes omitted).  For a prosecutor's failure to investigate to rise to

13

the level of a due process violation, it must be "tantamount to a suppression of relevant evidence." *Owens v. Foltz*, 797 F.2d 294, 296 (6th Cir. 1986). The *Owens* court explained that anything short of suppression was something that jurors could take into account in considering the evidence, but it was not a due process violation:

> The facts surrounding the investigation, and alleged lack of investigation, were at issue during the trial. The jury was free to consider this in determining whether the state had proved its case beyond a reasonable doubt.

*Id.*; *see also Arizona v. Youngblood*, 488 U.S. 51, 59 (1988) ("If the court meant by this statement that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree. The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests.").

Because Petitioner does not elaborate on the prosecutor's failure to investigate the claims, it is impossible to conclude that the failure is tantamount to the suppression of evidence. The "failures" Petitioner mentions in other arguments—Trooper Jermeay's failure to consult healthcare providers regarding evidence of penetration, Trooper Jermeay's failure to establish the times and locations of the penetrations to Petitioner's satisfaction, and Trooper Jermeay's failure to conduct forensic interviews of the victims—are not "tantamount to a suppression of relevant evidence." *Owens*, 797 F.2d at 296. They are, at most, weaknesses in the investigation of the case, weaknesses that opened the door to challenging the merits of the prosecutor's case. The fact that such a challenge did not succeed in swaying the jury to conclude that Petitioner was not guilty is not a due process violation. Petitioner is not entitled to habeas relief on this claim.

### B.    Solicitation of perjured testimony

The sexual assaults occurred over a period of years and Petitioner was prosecuted years after the last assault.  Not surprisingly there was some confusion attempting to identify when the incidents occurred.  It was important to fix the timing of the events at trial because the ages of Petitioner and his victims when the assaults occurred were elements of the charged offenses. Additionally, Petitioner contended that it was unlikely the assaults occurred at particular times because he was not living in proximity to the victims at some of the times that the victims alleged the assaults occurred.

Petitioner contends that the eldest victim perjured herself when she testified regarding the timing of the assaults.  "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 826 (6th Cir. 2019) ("*Mooney* made it clear that the Fourteenth Amendment right to due process prohibits a knowing and deliberate use by a state of perjured evidence in order to obtain a conviction.") (citation and internal quotes omitted).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Id.*  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

The testimony of the eldest victim unquestionably includes an irreconcilable inconsistency. The victim testified that Petitioner sexually assaulted her when she was 11 or 12 years old. (Trial Tr. I, ECF No. 10-5, PageID.598–603.) Based on that testimony, the assaults would have occurred during 2008 or 2009. Yet when the prosecutor continued to question the eldest victim, the prosecutor referred to the years 2011 and 2012, rather than the years 2008 and 2009 or the ages 11 or 12 years.[2] (*Id.*, PageID.602.) It appears to be a mistake on the prosecutor's part in asking the question, a mistake that was exacerbated when the witness answered without correcting the error.

The trial court discussed the issue in the context of concluding that Petitioner had failed to show good cause for not raising the issues on his direct appeal:

> [I]t is clear that the Prosecutor did not intentionally elicit incorrect date testimony to confuse the jury. He is questioning the victim about assaults when she was 11 or 12, then mistakenly asks about incidences during 2011 and 2012. The overall content of the questioning references assaults that occurred when the victim was 11 or 12 years old.

---

[2] The exchange reads as follows:

Q:   *During the time that you were twelve years old*, approximately how many times did the Defendant put his fingers inside of your vagina?

A:   Five.

Q:   *During the time that you were twelve years old, or even when you were eleven*, how many times approximately did he have intercourse with you at your grandparents' house in Levering?

A:   Five to ten.

Q:   *Over the period of time in 2011 or 2012*, how many times do your think he made you give him "a blow job."

A:   Five to ten.

(Trial Tr. I, ECF No. 10-5, PageID.602) (emphasis added). Prior to that testimony, the eldest victim testified the assaults had stopped when she was twelve years old. (*Id.*, PageID.600.) The eldest victim was born during December of 1996. (*Id.*, PageID.581–582, 591.)

(Emmet Cnty. Cir. Ct. Order, ECF No. 10-11, PageID.1123.)  The trial court's analysis of the facts is reasonable and well-supported by the record.  Petitioner has failed to provide any evidence, much less clear and convincing evidence, to overcome the presumption that the state court's determinations regarding the facts are correct.  Accordingly, Petitioner has failed to demonstrate that the prosecutor knowingly elicited perjured testimony or that the state courts' rejection of this prosecutorial misconduct claim is contrary to, or an unreasonable application of clearly established federal law.  He is not entitled to habeas relief on this claim.

### C.    Suppressed evidence and witnesses

Petitioner next contends that the prosecutor violated his obligations under *Brady v. Maryland*, 373 U.S. 83 (1994), because the prosecutor solicited perjured testimony from the eldest victim, suppressed medical records, suppressed statements from police interviews of Tessa Pittman and Kaylee Dunkle,[3] and suppressed LEIN information regarding Petitioner.  (Pet'r's Mot. for Relief from J., ECF No. 1-1, PageID.126–127.)    Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory,

---

[3] Tessa Pittman was apparently Petitioner's girlfriend at the time of one or more of the sexual assaults.  (Trial Tr. I, ECF No. 10-5, PageID.693.)  Kaylee Dunkle, according to Petitioner, was the otherwise unidentified girl mentioned during the eldest victim's testimony (Trial Tr. I, ECF No. 10-5, PageID.590) and her sister's testimony, (*Id*., PageID.685), as a person who was present during a game of "dirty truth or dare."  (Pet'r's Appeal Br., ECF No. 10-11, PageID.1083.)  Trooper Jermeay testified that he was unable to locate the "truth or dare" girl, (Trial Tr. II, ECF No. 10-6, PageID.752), but Petitioner claims that was a lie; Petitioner contends that Jermeay located and interviewed the girl.  Petitioner does not support that contention by anything other than his say-so.  The prosecutor pointed that out in response to the motion for relief from judgment and indicated that the girl was unknown to the prosecutor. (Prosecutor's Response, ECF No. 10-11, PageID.1110.)  In reply, Petitioner again insisted that the girl was Kaylee Renea Dunkle and that Trooper Jermeay contacted her.  (Pet'r's Reply, ECF No. 10-11, PageID.1116.)  Petitioner posited that the contact would be in the police report which he claims was withheld from the defense.  (*Id*.)  Thus, it appears that Petitioner was aware of Ms. Dunkle, but the prosecutor was not.  Petitioner has presented no evidence to the contrary.

or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

The trial court rejected Petitioner's *Brady* claims. The court rejected Petitioner's contention that the prosecutor failed to disclose the perjured testimony because there was no perjured testimony—the court interpreted the objectionable question and answer as a "mistake." (Emmet Cnty. Cir. Ct. Order, ECF No. 10-11, PageID.1123.) Moreover, it would have been impossible for the prosecutor to disclose the perjurious testimony before it was offered at trial. In that sense, Petitioner learned of the "perjury" the same time the prosecutor did. There was, therefore, "nothing for the government to disclose." *Bell*, 512 F.3d at 235.

18

The court rejected Petitioner's contention that the prosecutor violated *Brady* by failing to disclose medical records because Petitioner did not show that such evidence would have been exculpatory.  Indeed, the record supports the conclusion that there were not "undisclosed medical records" as Petitioner suggests.  Petitioner's counsel, when questioning the mother of two of the victims, asked if there would be medical records "of this incident."  (Trial Tr. I, ECF No. 10-5, PageID.705.)  She responded there were.  Counsel then asked if those records had been turned over to the prosecution.  (*Id*.)  The mother said "no."  (*Id*.)  Later in the questioning, however, the mother clarified that there had never been a physical examination of either of the two victims, only counseling—and the counseling had only occurred in the two months before trial. (*Id*., PageID.706–709.)

The trial court's determination that there was nothing in the record to suggest that the medical records would have been exculpatory is reasonable.  Petitioner's arguments to this Court likewise merely speculate that the medical records *might* have shown something that *might* have benefitted the defense.  That is not enough to demonstrate a *Brady* violation and it is certainly not enough to show that the trial court's rejection of the claim is contrary to, or an unreasonable application of, *Brady*.

Petitioner's *Brady* claim regarding the "statements" of witnesses Pittman or Dunkle fares no better.  Petitioner has failed to show that such statements exist.  The record testimony suggests they do not.  *See supra* at 17, n.3.  Moreover, even if they do exist, Petitioner has failed to show that the statements include any exculpatory information.  And it appears that Petitioner is far more aware of the content of statements from Pittman or Dunkle than the prosecutor ever was.  Thus, once again, there does not seem to be anything for the government to disclose.

Finally, Petitioner's *Brady* claim regarding his own LEIN information is mentioned, but it was never supported in the state courts or in this Court. Petitioner offers nothing to suggest that Petitioner's own LEIN information would be exculpatory; thus, the failure to disclose it could not give rise to a *Brady* claim.

### D.    Failure to endorse *res gestae* witnesses

Petitioner contends that the prosecutor failed to endorse and produce witnesses. The premise of Petitioner's argument regarding these witnesses is that the prosecutor has a duty to produce *res gestae* witnesses. The idea that the prosecutor must produce all witnesses "to the transaction" is a product of the English courts:

> The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable. The only legitimate object of the prosecution is, "to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence." The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community. And, according to the well-established rules of the English courts, all the witnesses present at the transaction, should be called by the prosecution, before the prisoner is put to his defense, if such witnesses be present, or clearly attainable. See *Maher v. The People*, 10 Mich., 225, 226. The English rule goes so far as to require the prosecutor to produce all present at the transaction, though they may be the near relatives of the prisoner. See *Chapman's case*, 8 C. & P., 559; *Orchard's case*, *Id*., note *Roscoe's Cr. Ev*., 164.

*Hurd v. People*, 25 Mich. 405, 416, 1872 WL 3237 (Mich. Oct. 8, 1872). The principle made its way into Michigan statutes by way of a requirement that the indictment—and eventually the information—include a list of witnesses endorsed by the prosecutor. *See People v. Pearson*, 273 N.W.2d 856, 866 (Mich. 1979) ("The rule took legislative form in 1859; . . . . The relevant language

has remained unchanged since first enacted.") (footnotes omitted).  It is not so much the statutory language, however, that matters here.  Instead, it is the Michigan courts' construction of that language "to require the prosecutor to indorse on the information, ***produce in court, and call all known res gestae witnesses***."  *Id*. (footnote omitted, emphasis added).

That is the source of Petitioner's claim that the prosecutor must produce all *res gestae* witnesses—not the federal constitution, not federal law—state law.  Moreover, in 1986, the Michigan Legislature eliminated the requirement that the prosecutor endorse all *res gestae* witnesses and the requirement that the prosecutor produce all endorsed witnesses.  *People v. Koonce*, 648 N.W.2d 153, 156 (Mich. 2002); *People v. Perez*, 670 N.W.2d 655, 657–58 (Mich. 2003).  The statutory amendment "replaced the prosecutor's duty to produce *res gestae* witnesses with 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.'"  *Perez*, at 657–58.

There does not appear to be any question that the prosecutor fulfilled his statutory duties in Petitioner's case.  Petitioner contends the prosecutor should have called the victims' brother and cousin, Tyler, and Kaylee Dunkle.  The state trooper interviewed Tyler.  Petitioner was aware of Tyler's presence during the alleged assaults based on the preliminary examination testimony.  There is no suggestion that Petitioner sought assistance in locating Tyler.  The prosecutor did not know the identity of "the girl" who was present during the dirty truth-or-dare game, so the prosecutor could not disclose the identity of that witness.

The *res gestae* witness rule is, or more accurately was, purely a matter of state law. The Sixth Circuit Court of Appeals has repeatedly held that the failure of a Michigan prosecutor to produce *res gestae* witnesses implicates no federal right.  *See Collier v. Lafler,* 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses

21

is a matter of state law, and its enforcement is outside the scope of our review. We have rejected on that basis claims raised under this very state requirement."); *Brown v. Burton*, No. 18-2145, 2019 WL 4865932, at *2 (6th Cir. Apr. 9, 2019) ("Brown[] claim[ed] that his Sixth and Fourteenth Amendment rights were violated when the prosecutor failed to produce two witnesses and failed to assist him in locating such witnesses. . . .  The district court concluded that Brown's claim alleged a state-law violation, which is not a basis for federal habeas relief. . . . Reasonable jurists would not debate that conclusion."); *Hatten v. Rivard*, No. 17-2520, 2018 WL 3089204, at *3 (6th Cir. May 9, 2018) ("This court has explained, however, that 'Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review.'") (quoting *Collier*); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. Jul. 19, 1995) ("Moreno's claim the prosecutor failed to call a *res gestae* witness, Bennett's sister, concerned a perceived error of state law which rarely serves as a basis for habeas corpus relief and does so only when, under federal constitutional law, the petitioner is denied fundamental fairness in the trial process."); *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at * 2 (6th Cir. Nov. 8, 1999) ("Smith is not entitled to relief on his claim that the prosecutor failed to call *res gestae* witnesses because issues of state law are not cognizable on federal habeas review . . . ."); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) ("[T]he *res gestae* requirement is a state law question.  Claims based on violations of state law are for the state courts to decide."); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710 (6th Cir. Aug. 24, 1988) ("[F]ederal law does not require production of all *res gestae* witnesses. . . . [A]lthough Michigan law requires the production of all *res gestae* witnesses . . . this court cannot hear state claims on petition for writ of habeas corpus . . . ."); *see also Grays v. Lafler*, 618 F. Supp. 2d 736, 745 (W.D.

Mich. 2008) ("There is no clearly established Supreme Court law recognizing a constitutional right to a *res gestae* witness.").

Habeas petitioners have attempted to "federalize" the claim that the prosecutor failed to produce a *res gestae* witness by contending, as Petitioner does, that the prosecutor violated *Brady*, or by arguing that the prosecutor interfered with the right to compulsory process, or the right to present a defense, or the right to confrontation; but none of those rights are at issue here.

The prosecutor plainly disclosed the existence of these witnesses and Petitioner had all of the information that he relies on now to show that their testimony mattered, so *Brady* is not implicated.  The court did not bar Petitioner from calling these witnesses, so his rights to compulsory process or to present a defense were not hampered.  And the witnesses did not testify either in court or through out-of-court statements, so Petitioner's confrontation rights were preserved.  In short, Petitioner raises only a state law claim that is not cognizable on habeas review; thus, he is not entitled to habeas relief.

## VI.    Altered and missing transcripts (habeas ground VI)

Plaintiff next contends that he was denied due process because there were altered or missing transcripts.  He has narrowed the claim to one transcript or at least one proceeding that was, apparently, never transcribed.

In preparation for trial, it came to the attention of counsel and the court that Petitioner had never been provided notice that the crimes charged carried a mandatory minimum sentence of 25 years.  The court held a hearing the day before trial to so inform Petitioner and to give him a chance to reevaluate the prosecutor's plea offer in light of that information.  That part of the hearing was transcribed.  (Hr'g Tr., ECF No. 10-4.)  The court adjourned the hearing to permit Petitioner and his counsel an opportunity to discuss the plea offer.

23

The circuit court docket indicates that, later the same day, the matter was reopened and Petitioner indicated that he wanted to proceed with trial.  (Emmet Cnty. Cir. Ct. Register of Actions, ECF No. 1-1, PageID.328.)  Plaintiff contends that much more occurred at the later proceeding.  He claims there was an on-the-record discussion of his dissatisfaction with his existing trial counsel and his desire for new counsel.  (Mot. for Relief from J., ECF No. 1-1, PageID.135–136, 139–141.)  Comments by Petitioner's counsel during trial suggest that other matters were discussed as well.  (Trial Tr. I, ECF No. 10-5, PageID.636.)  Finally, the prosecutor's response to Petitioner's motion for relief from judgment also seems to suggest that matters were discussed on the record that day that were not part of the transcription of the initial hearing.  (Prosecutor's Response, ECF No. 1-2, PageID.195.)

There appears to be little question that no transcript was ever prepared of the court proceedings when the parties came back on the record on August 26, 2014.  The register of actions indicates that proceedings occurred; but they were not transcribed.

The trial court concluded that "[a]ll transcripts were provided to Defendant through is appellate counsel."  (Emmet Cnty. Cir. Ct. Order, ECF No. 10-11, PageID.1125.)  That is probably true, but it does not address the fact that the second portion of the hearing was, apparently, never transcribed.  The prosecutor never contested Petitioner's claim that there were matters discussed on the record that are not part of the transcription from the first part of the August 26, 2014, hearing and the register of actions indicates that there were two distinct parts to the hearing.  That does not mean that the trial court's determination that "all transcripts were provided" is wrong, it just fails to address the possibility that some portion of the August 26 proceedings was never transcribed.

24

The trial court did not end its analysis with the assertion that Petitioner received all transcripts. The court went on to note that Petitioner failed to show "how the claimed missing segment is of consequence to his trial or his appeal." (*Id*.)

Petitioner claims that the "missing" transcript includes his request for substitute counsel and the trial court's denial of that request. But Petitioner is free to explain to this Court, as he was free to explain to the trial court or the Michigan appellate courts, why he believed he was entitled to substitute counsel. Moreover, there appears to be no dispute that the trial court denied the substitution because Petitioner had already been afforded substitute counsel on the eve of the first scheduled trial and sought new counsel again when the second scheduled trial was to begin the next day. Thus, although the transcript might be a convenient record of the argument Petitioner presented to the trial court, it is not necessary to resolve the constitutionality of Petitioner's claim that the trial court violated his constitutional rights when the court denied Petitioner substitute counsel.

In *Scott v. Elo*, 302 F.3d 598 (6th Cir. 2002), the court considered the scope of due process protection when there is an allegation that a transcript is missing:

> Scott's third claim is that the failure to transcribe a significant portion of the closing argument denied him due process . . . . Scott relies heavily on the Supreme Court's opinion in *Mayer v. Chicago*, 404 U.S. 189 (1971), to argue that due process requires that a defendant be given a reliable record of sufficient completeness to permit proper review of his claims. Yet, *Mayer* was a case in which there was an existing record, and the only question was whether an indigent defendant convicted of a nonfelony, rather than a felony, was entitled to the complete transcript where the defendant's grounds for appeal made out a colorable need for a complete transcript. The Court held that such a defendant must be afforded a "'record of sufficient completeness' to permit proper consideration of [his] claims." *Id*. at 194. The Court went on to acknowledge that a record of sufficient completeness did not necessarily require a verbatim transcript, so long as the state found other means of providing an adequate record . . . . *Id*. The Court placed the burden on the state, in that situation, to show that something less than a complete transcript would be sufficient.

*Mayer* does not stand for the proposition, implicit in Scott's argument, that where a portion of a trial transcript is missing and unobtainable, and where a defendant makes a claim that could possibly implicate that portion of the transcript, a retrial is always necessary. Rather, the Sixth Circuit has held that federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). . . . "Although this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id.*

*Scott*, 302 F.3d at 604–05; *see also Winkler v. Parris*, 927 F.3d 462, 466 (6th Cir. 2019) ("[I]n order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts.") (citation and internal quotes omitted); *Bransford v. Brown*, 806 F.3d 83, 86 (6th Cir. 1986) (same).

The trial court's conclusion that Petitioner had failed to demonstrate prejudice flowing from the missing transcript is reasonable. Petitioner was able to present his arguments challenging the trial court's denial of his motion to appoint substitute counsel in the state courts and he has been able to present the arguments here. Although the transcript would provide a more complete account of the arguments Petitioner raised to the trial court and the trial court's ruling, there is no suggestion that Petitioner has not been able to accurately recount the arguments and ruling. Accordingly, Petitioner has failed to demonstrate that the trial court's rejection of his claim regarding the missing transcript is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

## VII.    Failure to appoint new counsel (habeas ground V)

Petitioner contends that he was denied his constitutional right to counsel when the trial court refused to appoint substitute counsel when, on August 26, 2014, during a hearing where Petitioner was provided notice of the 25-year mandatory minimum sentence, Petitioner "blurted out" his dissatisfaction with defense counsel. Petitioner reports that he was dissatisfied with counsel for several reasons: counsel failed to adequately investigate his defense, counsel did not

intend to call alibi witnesses, counsel pressured Petitioner to take a plea deal, counsel failed to hire or solicit testimony from an expert witness, and counsel advised Petitioner against testifying in his own defense.

The trial court refused to appoint new counsel.  It was the day before trial, the jury venire had been summoned to appear, and Petitioner had sought new counsel previously on the eve of the first scheduled trial.

"In all criminal prosecutions," the Sixth Amendment says, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  That includes the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quotation omitted).  Deprivation of the right is complete when a defendant is erroneously denied counsel of choice; he need not show prejudice or demonstrate that the counsel he received was ineffective.  *Id*. at 148.  However, "the right to counsel of choice 'is circumscribed in several important respects.'"  *Id.* at 144 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  One of those respects is that trial courts retain "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar."  *Id*. at 152 (citation omitted).  Nevertheless, "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Recognizing this "wide latitude in balancing," *Gonzalez-Lopez*, 548 U.S. at 152, the Supreme Court has concluded that, to warrant a substitution of counsel during trial, the defendant "'must show good cause such as a conflict of interest, a complete breakdown in

27

communication or an irreconcilable conflict with the attorney . . . .'" *United States v. Sullivan*, 431 F3d 976, 979-80 (6th Cir. 2005) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)).  The Supreme Court has recognized that "courts addressing substitution motions in both capital and non-capital cases routinely consider issues of timeliness." *Martel v. Clair*, 565 U.S. 648, 662 (2012).  And, the Sixth Circuit, when reviewing a trial court's denial of a motion to substitute counsel, considers timeliness as one of four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)).

Gonzalez-Lopez states clearly that it "is not a case about a court's power to . . . make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 152.  Petitioner has not and cannot cite any Supreme Court authority holding that a trial court's discretionary denial of a request for new counsel on the day of trial (or the day before) violates Petitioner's constitutional right to counsel of his choice.[4]

When "'the granting of the defendant's request [to substitute counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008).  The more general the rule, and the broader the discretion afforded to the trial court, "'the more leeway

---

[4] Indeed, the Sixth Circuit Court of Appeals has routinely indicated that the denial of such a motion on the day of trial is appropriate on timeliness grounds. *See, e.g., Gilkey v. Burton,* No. 18-1760, 2019 WL 2970841, at *3 (6th Cir. Mar. 22, 2019); *McGhee v. MacLaren*, No. 17-1708, 2018 WL 3120798, at *2 (6th Cir. Jan. 19, 2018); *Mullins v. McKee*, No. 17-1845, 2018 WL 510134, at *2 (6th Cir. Jan. 3, 2018); *Nelson v. Jackson*, No. 16-2623, 2017 WL 5624278, at *3 (6th Cir. Jul. 17, 2017); *United States v. Jackson*, 662 F. App'x 416, 422–23 (6th Cir. 2016).

[state] courts have in reaching outcomes in case-by-case determinations.'" *Renico*, 559 U.S. at 776 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The trial court's exercise of its discretion to deny Petitioner's motion to substitute counsel was not unreasonable.  Petitioner's complaints about his counsel did not evidence the "good cause" contemplated by *Gonzalez-Lopez*.  Petitioner identifies strategic disagreements with counsel over several points, including alibi witnesses, an expert witness, and Petitioner as a witness.  But he does not allege that counsel had a conflict of interest or that communications with counsel had completely broken down.  Petitioner suggests that he and counsel had an irreconcilable conflict, but there is a difference between an irreconcilable conflict and disagreements over strategy.  Disagreements over strategy do not suffice to establish good cause.  *See, e.g., United States v. Johnson*, 612 F. App'x 345, 352 (6th Cir. 2015); *United States v. Herrera*, 636 F. App'x 2d 250, 255 (6th Cir. 2016).

Stated generically, a strategic disagreement regarding whether to present alibi testimony might seem significant.  Closer examination, however, reveals that Petitioner had failed to identify any witnesses that could provide alibis for the many indefinite dates of the alleged assaults.  His proposed alibi testimony appears to have been based on whether Petitioner lived in the area where the assaults occurred when they were alleged to have occurred.  But the assault claims did not rise or fall based on where Petitioner was living.  It was beyond dispute that even when Petitioner lived elsewhere, the extended family got together for visits.

Petitioner has failed to demonstrate that the Michigan Court of Appeals rejection of his claim that he was denied counsel of his choice is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

29

## VIII.   Ineffective assistance of trial counsel (habeas ground III)

Petitioner contends that his trial counsel was ineffective in multiple respects.

Specifically, Petitioner alleges that counsel:

- failed to request production of *res gestae* witnesses;

- failed to advise Petitioner of the mandatory minimum 25-year sentence;

- failed to do basic pretrial investigation;

- failed to contact and subpoena known alibi, *res gestae*, and expert witnesses;

- failed to object to prosecutorial misconduct;

- failed to impeach prosecution witnesses; and

- failed to admit evidence of location.

(Pet., ECF No. 1, PageID.9.)

The trial court considered and rejected Petitioner's claims of ineffective assistance

of trial counsel, applying the following standard:

> To establish ineffective assistance of counsel, Defendant must prove that his lawyer's performance fell below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).  He must also show prejudice, meaning a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *People v Carbin*, 463 Mich 590,600; 623 NW2d 884 (2001).  In *People v Payne*, 285 Mich App 181; 774 NW2d 714 (2009), the Court stated:

> > "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy.  In general, the failure to call a witness can constitute ineffective assistance of counsel only when it "'deprives the defendant of a substantial defense.'"  *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). . . .

> > "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the 'benefit of hindsight when assessing counsel's competence.'"  *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). . . .

> > "However, 'decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy,'

30

which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

(Emmet Cnty. Cir. Ct. Op. & Order, ECF No. 10-11, PageID.1122.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The trial court's statement of the "ineffective assistance" standard is entirely consistent with *Strickland*. Thus it cannot be said that the court applied the wrong standard, leaving Petitioner to show that the court applied the standard unreasonably if Petitioner is to obtain habeas relief.

31

A.      **25-year mandatory minimum**

Petitioner contends that counsel rendered ineffective assistance for failing to advise Petitioner that the crimes with which he was charged carried a mandatory minimum sentence of 25 years.  Petitioner suggests that he was unable to properly evaluate plea offers because he was unaware of the mandatory minimum.  It does not appear that Petitioner raised this issue in the trial court in his motion for relief from judgment.  (Mot. for Relief from J., ECF No. 1-1, PageID.85–144.)  Petitioner first attempted to raise the issue in connection with his appeal from the order denying his motion for relief from judgment.  (Request for Misc. Relief, ECF No. 10-11, PageID.1015–1018.)  But he raised it after the court of appeals had denied leave to appeal, so it was rejected.  *See*  https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=344764&CourtType_CaseNumber=2 (visited May 21, 2021).  It does not appear that Petitioner raised the issue in the Michigan Supreme Court at all.  (Appl. for Leave to Appeal, ECF No. 10-12, PageID.1176–1237.)  Thus, because Petitioner did not raise the issue to each level of the Michigan court system, he may not have exhausted his state court remedies with respect to the claim.

Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See*

32

*Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277–78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993). With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Presentation of an issue for the first time on discretionary review to an appellate court does not fulfill the requirement of "fair presentation." *Castille*, 489 U.S. at 351. Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he raises a claim for the first time on discretionary appeal. *See Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010); *Granger v. Hurt*, 215 F. App'x 485, 491 (6th Cir. 2007); *Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (6th Cir. Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *Hafley*, 902 F.2d at 483; *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368-70 (10th Cir. 1997);

*Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990); *but see Ashbaugh v. Gundy*, 244 F. App'x 715, 717 (6th Cir. 2007) (declining to reach question of whether a claim raised for the first time in an application for leave to appeal to the Michigan Supreme Court is exhausted).  Unless the appellate court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts.  Even if Petitioner had properly and timely included the issue in his applications to both Michigan appellate courts, his applications were denied, and, thus, the issue was never reviewed.  It remains unexhausted.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  Dismissal for lack of exhaustion is only appropriate if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  If no further state remedy is available to the petitioner, the exhaustion requirement does not require dismissal, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court.  *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq.*  *See* Mich. Ct. R. 6.502(G)(1).  Petitioner already has filed his one allotted motion.  He therefore has no available remedy; his claim is procedurally defaulted.

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to

address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The evaluation of cause and prejudice often involves consideration of the same issues the Court must resolve to simply address the merits. That is the case here. Under those circumstances, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). That is the approach the Court will take here.

Consideration of this claim on the merits requires application of the *Strickland* test. The two-part *Strickland* test also applies to a challenge to a guilty plea based on ineffective assistance of trial counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* at 58–59. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. *Id*. at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that the *Strickland* standard applies not only where counsel's professionally unreasonable conduct results in acceptance of a plea offer, but also where counsel improperly advises his client and the plea offer is rejected. As in *Hill*, 474 U.S. at 58, the prejudice prong of

*Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See Lafler*, 566 U.S. at 162–68.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

Petitioner's claim that trial counsel rendered ineffective assistance is focused on counsel's failure to advise Petitioner that he faced a mandatory minimum sentence of 25 years if convicted of CSC-I.  According to Petitioner, counsel's failure to so advise Petitioner caused Petitioner to reject favorable plea offers from the prosecutor.  Petitioner's claim against trial counsel would not succeed under *Strickland*, *Hill*, *Lafler*, and *Frye* if Petitioner were otherwise aware that a CSC-I conviction would result in a mandatory minimum sentence of 25 years.

The Michigan Court Rules provide for informing an accused of "the nature of the offense charged and its maximum possible prison sentence and any mandatory minimum sentence required by law . . . ."  Mich. Ct. R. 6.104(E).  The requirements of Rule 6.104(E) are addressed to arraignment on the complaint or warrant in district court; however, the same facts—the nature of the offense charged, the maximum possible prison sentence, and any mandatory minimum sentence—are conveyed when the accused is arraigned on the information in the circuit court; the information must contain information regarding the penalty of the offense allegedly committed.  Mich. Ct. R. 6.112(D).  It appears to be beyond dispute that Petitioner was not advised regarding the 25-year mandatory minimum as contemplated by the Michigan Court Rules.

Under *Frye*, to prevail on his claim, Petitioner must show that, if counsel had only advised him of the 25-year mandatory minimum, he would have taken the plea.  He cannot make that showing.  Before trial, defense counsel, the prosecutor, and the court were made aware that the 25-year mandatory minimum had not been disclosed in the pretrial processes.  The court

36

conducted a hearing to specifically advise Petitioner of the 25-year mandatory minimum and to afford Petitioner an opportunity to reconsider the prosecutor's earlier plea offer.  (Hr'g Tr., ECF No. 10-4.)  Then, despite Petitioner's knowledge of the 25-year mandatory minimum, he did not take the plea.[5]

Even if counsel failed to advise Petitioner of the mandatory minimum, and even if that failure was professionally unreasonable, Petitioner cannot show prejudice because, prior to trial, with full knowledge of the mandatory minimum, he declined the plea.  Therefore, Petitioner cannot show that his trial counsel rendered constitutionally ineffective assistance.  He is not entitled to habeas relief on that claim.

### B.    Failure to object to prosecutorial misconduct

Petitioner next objects that counsel rendered constitutionally ineffective assistance when she failed to object to prosecutorial misconduct.  The trial court rejected Petitioner's claim, principally because the instances of "prosecutorial misconduct" were not, in fact, prosecutorial misconduct.  (Emmet Cnty. Cir. Ct. Op.& Order, ECF No. 10-11, PageID.1123–1124.)  When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument

---

[5] Petitioner's present suggestion that if he had only known about the mandatory minimum he would have taken the plea is belied by the position he announced to his counsel throughout the pretrial period:

> During [counsel's] visits the only topic brought up regarding my case was the option of taking a plea.  This was discussed multiple times even though I have said since day one that I would NOT take a plea.

(Pet'r's Request for Investigation, ECF No. 1-2, PageID.165.)

that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

For all of the reasons set forth above in § V, *supra*, The trial court's resolution of this claim is eminently reasonable.  There was no prosecutorial misconduct to which counsel might have objected.  Moreover, counsel's efforts to address the issues regarding the timing of the alleged assaults were, as the trial court found, reasonable.  Accordingly, Petitioner has failed to show that the trial court's resolution of this ineffective assistance claim was contrary to, or an unreasonable application of, the clearly established federal law of *Strickland*.  He is not entitled to habeas relief on this claim.

## C.    Counsel's failure to pursue Petitioner's "alibi"

Woven within Petitioner's list of grievances against his counsel are several claims that are based on counsel's failure to develop Petitioner's claim that he was simply not there when the alleged assaults occurred.  Petitioner suggests that his counsel could have easily shown that he did not live in the area where the assaults against the oldest victim occurred when they allegedly occurred.  The conclusion that Petitioner draws from that available evidence—that he could not have committed the assaults—is a *non sequitur*.  As the trial court explained, "testimony of the victims and of other relatives of [Petitioner] established that [Petitioner] visited this area and attended most family gatherings and 'was always around.'" (Emmet Cnty. Cir. Ct. Op. & Order, ECF No. 10-11, PageID.1122.)  The fact that Petitioner did not ***live*** there at the time does not logically preclude his participation in the assaults charged.

Moreover, the evidence that Petitioner claims his counsel failed to present was cumulative. The oldest victim testified that Petitioner did not live where the assaults occurred when they occurred. (*Id.*)

Under the circumstances, the trial court's conclusion that Petitioner had neither shown that his counsel was professionally unreasonable for failing to further develop this point nor shown any resulting prejudice is entirely reasonable, factually and legally. Again Petitioner has failed to demonstrate that the trial court's resolution is contrary to, or an unreasonable application of *Strickland* and he is not entitled to habeas relief on this claim.

### D.    Counsel's failure to solicit testimony from the oldest victim's younger brother

Petitioner also argues that counsel failed to present testimony from one victim's younger brother who, according to the victim, was in the room playing a video game while Petitioner penetrated the victim under the cover of a blanket. The victim indicated that her brother was not aware of the penetration and that she did not alert him to it. It is not clear what testimony Petitioner hoped to solicit from the younger brother or how it would have helped his case.

"A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice."). At best, the brother would have testified that he neither saw nor heard a sexual assault that day—that is exactly the testimony that the victim had already provided. The trial court's rejection of this ineffective assistance claim is neither contrary to, nor an unreasonable application of, *Strickland*—counsel was not professionally unreasonable when she chose to forego this testimony and its absence caused Petitioner no discernible prejudice. Therefore, Petitioner is not entitled to habeas relief on the claim.

E.    **Counsel's failure to investigate and present expert testimony**

Petitioner next complains that counsel failed to secure expert testimony to counter

the expert testimony offered by the prosecutor.  The trial court rejected Petitioner's complaint:

> Next, Defendant claims that trial counsel erred when she failed to hire an
> expert witness to counter the Prosecution's expert witness.  The expert, Barbara
> Cross, testified regarding why victims may delay reporting of abuse.  Ms. Cross did
> not testify about any particular victim nor provide any opinion regarding
> Defendant's case.
>
> [Petitioner's counsel] was able to cross-examine Ms. Cross at length
> regarding her theory and the victims regarding why they delayed reporting the
> abuse.  The victims reported the abuse within one year of the last incident and were
> clearly able to recall the past several years of abuse in detail.  Defendant has not
> shown how an expert would have countered this general testimony regarding
> delayed reporting or supp[ort]ed a defense theory sufficient to possibly change the
> outcome of the trial.

(Emmet Cnty. Cir. Ct. Op. & Order, ECF No. 10-11, PageID.1123.)

The expert's testimony, (Trial Tr. II, ECF No. 10-6, PageID.717–31), was hardly a

crucial aspect of the case against Petitioner.  The expert testified that there are times when children

delay in disclosing sexual abuse.  (*Id*., PageID.720–721.)  The expert indicated that the closer the

relationship between the abuser and the abused the more likely it can be that the child will delay.

Similarly, if the abuser lives with the abused it is less likely the abused will disclose.  And if the

abuse has continued for a long time, the child is less likely to tell.

Petitioner's counsel questioned the expert about circumstances that might make the

abused more likely to disclose sooner, such as protection of a younger relative.  (*Id*., PageID.723.)

Petitioner's counsel managed to get the expert to acknowledge that, when abuse occurs during

extended family visits, the abused could come up with reasons not to visit rather than disclose.

(*Id*., PageID.723–724.)  Defense counsel also elicited expert testimony that the behavior of an

abused can change drastically—socially, academically, and emotionally.  (*Id*., PageID.724–725.)

Counsel even succeeded in getting the expert to indicate that physical examination can provide important corroborating evidence of abuse.  (*Id.*, PageID.725–727.)

The expert admitted that she had never spoken with the victims in Petitioner's case and that she had not reviewed any particular details regarding the case.  Perhaps for that reason Petitioner's counsel elicited all of the testimony from the prosecutor's expert that she might have hoped to elicit from a defense expert.  The sum total of the expert's testimony included the following:

- abused children might disclose right away in some circumstances (including circumstances that, perhaps unbeknownst to the expert, existed in Petitioner's case) or they might not in some circumstances (including circumstances that, perhaps unbeknownst to the expert, existed in Petitioner's case);

- abused children who are abused during extended family visits can come up with reasons not to visit (which, perhaps unbeknownst to the expert, one or more of the victims did not do);

- abused children can suffer dramatic changes socially, academically, and emotionally (which, perhaps unbeknownst to the expert, one or more of the victims did not suffer), indeed the prosecutor rehabilitated the expert on this point by essentially getting the expert to acknowledge that abuse victims might appear to excel socially, academically, or emotionally or utterly fail or fall anywhere in between; and,

- physical examination can provide important corroborating evidence of abuse, even though, perhaps unbeknownst to the expert, no such examinations occurred in Petitioner's case.

It is difficult to imagine what more Petitioner could have hoped to accomplish by presenting testimony from his own expert.  By the time the prosecutor's expert was done testifying, the significance of the rather innocuous delay in disclosure in Petitioner's case did not offer a compelling argument for or against the credibility of the victims' stories.  Certainly, Petitioner has failed to show that the trial court's resolution of the issue is contrary to, or an unreasonable application of *Strickland*.  Accordingly, he is not entitled to habeas relief on the claim.

41

IX.    **Ineffective assistance of appellate counsel (habeas ground VIII)**

Petitioner contends his appellate counsel also rendered ineffective assistance because appellate counsel failed to raise the issues that Petitioner ultimately raised in his motion for relief from judgment.  The trial court rejected that claim:

> Appellate counsel is not required to raise arguments of which he or she is not aware nor is he required to raise every issue of arguable legal merit.  *People v Reed, supra*.  Therefore, counsel is certainly not ineffective for failing to raise an issue of no merit.  Likewise, appellate counsel need not advise Defendant how to raise a meritless issue on his own.

(Emmet Cnty. Cir. Ct. Op. & Order, ECF No. 10-11, PageID.1125.)

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

As set forth fully above, the arguments that Petitioner's appellate counsel chose to forego were not only of lesser merit than the argument raised; the arguments were of no merit whatsoever.  The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Shaneberger v. Jones*, 615 F.3d

448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting

meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706

F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner has failed to show that the court of appeals'

rejection of the ineffective assistance of appellate counsel claim is contrary to, or an unreasonable

application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this

claim.

## X.    Cumulative effect (habeas ground VII)

Finally, Petitioner argues that if the errors of which he complains do not suffice to

warrant habeas relief standing alone, they warrant that relief when considered together.  Under the

AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law.

*Bailey*, 271 F.3d at 655.  The Sixth Circuit repeatedly has stated that cumulative error claims are

not cognizable on habeas review.  "The Supreme Court has not held that constitutional claims that

would not individually support habeas relief may be cumulated in order to support relief." *Scott*,

302 F.3d at 607; *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v.

Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004);

*Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th

Cir. 2002).  Moreover, because the individual claims are without merit, Petitioner cannot show

that the cumulative error violated his constitutional rights.  *See Seymour*, 224 F.3d at 557.

## XI.    Petitioner's supplemental reply

After Respondent answered the petition, Petitioner filed a reply.  (ECF No. 11.)

Several months later, Petitioner filed a supplemental reply (ECF No. 13), wherein he raised

additional arguments and requested discovery and an evidentiary hearing.  The undersigned has

considered all of Petitioner's supplemental arguments when resolving Petitioner's claims.

Petitioner's request for discovery is focused on the "missing transcript."  For the reasons set forth above, the undersigned concludes that discovery regarding the missing transcript is unnecessary to resolve the claims Petitioner has raised.

With regard to Petitioner's request for an evidentiary hearing, generally, habeas corpus actions are determined on the basis of the record made in the state court.  *See* Rule 8, Rules Governing § 2254 Cases.  An evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present.  *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000).  The undersigned concludes that none of the circumstances requiring a hearing is present here.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits

review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I also recommend that Petitioner's requests for discovery and an evidentiary hearing (ECF No. 13) be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:   July 27, 2021                               /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).